# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **DERRICK GARNER,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL NO. 1:20-CV-01167-DAE** |
| **MARTIN MARIETTA** | § | |
| **MATERIALS, INC.,** | § | |
| *Defendant* | § | |

## O R D E R

Before the Court are Plaintiff's Motion to Compel, filed August 27, 2021 (Dkt. 17); Defendant's Response, filed September 3, 2021 (Dkt. 18); and Plaintiff's Reply, filed September 10, 2021 (Dkt. 19). On August 30, 2021, the District Court referred the motion to the undersigned Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff Derrick Garner was hired as a ready-mix concrete truck driver by Defendant Martin Marietta Materials, Inc. in October 2017. Plaintiff's employment was terminated on January 27, 2020, two days after he missed a day of work under the Family and Medical Leave Act ("FMLA") to care for his mother. Complaint, Dkt. 1 ¶ 10. Plaintiff alleges that: "The reasons given for Mr. Garner's termination are a pretext for illegal discrimination based on Mr. Garner's association with his mother, who was disabled, and for retaliation for taking protected leave" under the FMLA. *Id.* Plaintiff alleges claims of associational discrimination under the FMLA, 29 U.S.C. §§ 2615(a) and (b), and the Americans with Disabilities Act, 42 U.S.C. 12112(b)(4). Plaintiff seeks

1

reinstatement and damages, including compensatory, punitive, and liquidated damages, as well as attorney and expert fees.

Defendant contends that Plaintiff was fired after he ruined a load of concrete (the "lost load") by failing to backspin the drum on his truck to remove water before it was filled with concrete. Dkt. 18 at 2. Between August 2018 and September 2019, Plaintiff received six write-ups for performance infractions, including (1) improperly mixing concrete; (2) causing a fender bender; (3) driving his truck into a telephone wire; (4-5) twice failing to show up for work; and (6) running a stop sign. *Id.* at 1-2; Dkts. 18-5 to 18-10. Defendant contends that it terminated Plaintiff's employment "based on his performance-related disciplinary actions over the twelve months before termination." Dkt. 18 at 3.

In his motion to compel, Plaintiff seeks documents concerning other drivers who lost a load of concrete and reported to the same direct supervisor – Trinity Kujawa, who made the decision to fire Plaintiff – at the same plant where he worked, the Harold Green Plant. Specifically, Plaintiff moves to compel:

1. All lost load reports for drivers who reported to Kujawa at the Green Plant where the load was lost because of driver error.

2. All disciplinary notices related to lost loads issued to any driver at the Green Plant during the time Kujawa was the manager at the Green Plant.

3. Complete personnel files (excluding any personal or confidential medical information) of all drivers employed at the Green Plant during the time Kujawa was the plant manager and who lost a load due to driver error during the time Kujawa was the plant manager. The term "personnel file" includes all personnel records, including but not limited to records of hiring, separation, compensation, discipline, and job performance.

Dkt. 17 at 9; *see also* Requests for Production 8-12, Dkt. 17-2 at 3-5. Plaintiff contends that these documents are relevant to whether he was treated differently from similarly situated employees and whether Defendant's articulated reason for firing him "was a pretext for illegal discrimination and retaliation." *Id.* at 5.

2

Defendant responds that Plaintiff's requests are overbroad, arguing that the Fifth Circuit requires "an employee who proffers a fellow employee as a comparator [to] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" (quoting *Lee v. Kansas City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009)). Dkt. 18 at 4. Defendant points out that Plaintiff has identified no comparator and courts do not condone "fishing for comparators across a large group of unidentified employees." *Id.* Defendant further asserts that personnel files are entitled to protection. *Id.* at 6-7. Instead of searching the complete time when Kujawa managed the Green Plant (from 2018 to 2020) and producing entire personnel files, Defendant offers to search for all lost loads caused by driver error at the plant during a three-month period extending before and after Plaintiff was fired, from December 2019 through February 2020, and produce the corresponding lost load reports and disciplinary write-ups. *Id.* at 3.

## II.   Legal Standards

Federal Rule of Civil Procedure 26(b)(1) provides that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petrol.* Co., 392 F.3d 812, 820 (5th Cir. 2004)).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A trial court enjoys wide discretion in determining the scope and effect of discovery. *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 255 (5th Cir. 2019).

3

### III.   Analysis

In employment discrimination cases, courts must balance the potential relevance of discovery against the burden to the employer. *Beasley v. First Am. Real Est. Info. Servs., Inc.*, No. 3-04-CV-1059-B, 2005 WL 1017818, at *1 (N.D. Tex. Apr. 27, 2005). "The scope of discovery includes information pertaining to similarly situated employees to the extent that it is proportional to the needs of this case." *Hernandez v. Clearwater Transp., Ltd.*, No. 1:18-CV-319 RP, 2021 WL 148053, at *3 (W.D. Tex. Jan. 15, 2021).

Courts commonly extend the scope of discovery to a reasonable number of years both before and after an employment liability period. *Id.* While the relevant time frame is case-specific, courts generally have limited the discovery period to two to five years before the liability period. *See id.* (finding that a four-year discovery period before the discriminatory incident was reasonable); *Bell v. Hercules Liftboat Co.*, No. 11-332-JJB-SCR, 2011 WL 6140680, at *1 (M.D. La. Dec. 9, 2011) (holding that plaintiff's discovery requests were "plainly overly broad" and concluding that discovery period of three years before the discrimination was reasonable); *Beasley*, 2005 WL 1017818, at *1 (permitting two-year discovery period); *Marchese v. Sec'y, Dep't of the Interior*, No. A. 03-3082, 2004 WL 2297465, at *3 (E.D. La. Oct. 12, 2004) (permitting three-year discovery period). On the facts of this case, the Court finds the time frame for the discovery Plaintiff seeks to be reasonable.[1]

For Plaintiff to proffer another driver as a comparator, the employment actions compared will be deemed to have been taken under nearly identical circumstances if he and the other driver: (a) held the same job or responsibilities; (b) shared the same supervisor or had their employment status determined by the same person; (c) have essentially comparable violation histories; and

---

[1] Plaintiff characterizes the time period as two years, Defendant as three years, but neither provides the specific dates when Kujawa managed the Green Plant. The disparity does not affect the Court's analysis.

4

(d) "critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260 (footnote omitted). Plaintiff's production requests are tailored to these requirements, relating to employees with the same (a) job, (b) supervisor, and (d) specific conduct, i.e., a lost load caused by driver error. The Court agrees with Plaintiff that he cannot identify any potential comparators without discovery pertaining to factor (c): whether any other driver who lost a load due to driver error had a violation history comparable to Plaintiff's.

The Court also finds that, because Kujawa made the decision to fire Plaintiff, Defendant has not established that the presence of assistant plant manager Zachary Dorsey, who was supervising Plaintiff instead of Kujawa when Plaintiff lost the load in question, is necessary for comparator conduct to be "nearly identical." Dkt. 18 at 5. *See Lee*, 574 F.3d at 260-61 ("We do not, however, interpret 'nearly identical' as synonymous with 'identical.' . . . For example, it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor.").

Approximately 60 drivers worked at the Green Plant during the two years when Kujawa was manager, from 2018 to 2020. Dkt. 18 at 7. Plaintiff submitted evidence that four loads were lost due to driver error during the month he was fired. Dkt. 17-1. Assuming that month was average, nearly 100 loads would have been lost due to error by the 60 drivers employed during a Kujawa's tenure as manager of the Green Plant. *See* Dkt. 19-2 at 57:7-12 (deposition testimony that Dorsey remembered drivers losing loads at the Green Plant "many times over"). On the facts of this case, the Court balances the high frequency with which loads of concrete apparently were lost against the relatively small number of drivers employed at the Green Plant when Kujawa was manager.

The Court finds that Plaintiff's requests for the personnel files of up to 60 drivers is overbroad and likely to require Defendant to produce irrelevant material that may implicate the privacy interests of non-parties, even under protective order. *See, e.g.*, *Freeman v. Wynden Stark, LLC*, No. 1:20-cv-589-LY, 2021 WL 148055, at *3-4 (W.D. Tex. Jan. 15, 2021) (limiting discovery of personnel file to information relevant to plaintiff's claims); *Ochoa v. Progressive Pipeline Constr., LLC*, No. SA-13-CA-122-FB, 2014 WL 12873122, at *2 (W.D. Tex. Jan. 15, 2014) ("To obtain non-party personnel records, the requesting party must demonstrate the particular relevance of the personnel records to the issue."); *cf. Jepsen v. Fla. Bd. Of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980) (holding that plaintiff should have been allowed to introduce evaluation forms into evidence at trial where she moved to compel production of personnel files).

Accordingly, for each lost load caused by driver error while Kujawa was manager of the Green Plant, Defendant must produce (1) the corresponding lost load report, and (2) for each driver identified in item (1), all disciplinary notices issued to the driver while Kujawa was manager, including any termination notices. This information should be sufficient to allow Plaintiff to identify whether any comparators with violation histories comparable to his exist.

## IV.   Conclusion

For these reasons, Plaintiff's Motion to Compel (Dkt. 17) is **GRANTED IN PART and DENIED IN PART**, as detailed above. Notwithstanding that discovery is set to close on October 4, 2021, Defendant has until **October 7, 2021**, to produce (1) the lost load report for each lost load caused by driver error while Kujawa was manager of the Harold Green Plant, and (2) for each driver in item (1), all disciplinary notices issued to the driver while Kujawa was manager, including any termination notices.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable David A. Ezra.

**SIGNED** on September 27, 2021.

_____

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE